IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA       )
                               )
        v.                     )       1:10CR423-1
                               )
MICHAEL ANTHONY ROBINSON, JR.  )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This matter is before the court on the Motion for Disclosure of Informants (Doc. 19) and Motion to Suppress (Doc. 14) filed on behalf of Defendant Michael Anthony Robinson, Jr. ("Robinson"). The parties have had an opportunity to brief the motions, and an evidentiary hearing was held on April 20, 2011. For the reasons set forth below, both motions will be DENIED.

## I.   BACKGROUND

At the evidentiary hearing, the Government presented the testimony of Patrick Tierney, a detective with the Concord (North Carolina) Police Department ("Concord PD"). Detective Tierney has been employed by the Concord PD since March 1, 1999, and has been employed in the area of vice and narcotics for the last nine years. The court finds Detective Tierney's testimony credible and finds the following facts.

On December 23, 2009, a confidential source of information (referred to as "CSI-337") telephoned Detective Tierney to

provide information about two individuals dealing drugs from two different locations. As relevant here, CSI-337 advised of a "stocky" black male in his mid-thirties, standing approximately five feet eleven inches tall, who went by the name of "Mike." CSI-337 indicated that "Mike's" house was located on Bay Avenue in Concord, North Carolina, and provided directions to it. The house was described, including the presence of a chain link fence surrounding it. CSI-337 noted that "Mike's" girlfriend lived with him and also sold crack cocaine from the residence. The informant had seen "Mike" with a bag containing approximately 40 small bags of crack cocaine. Detective Tierney documented his conversation with CSI-337. (Gov't Ex. 2.)

Detective Tierney had used CSI-337 numerous times to provide information and assistance in law enforcement since the detective signed up the informant nine years earlier. The Concord PD maintains a file on all confidential sources of information and documents their actions. If credibility ever becomes an issue, the informant's file is marked "unreliable." At all times relevant here, Detective Tierney regarded CSI-337 as reliable.

Detective Tierney began to verify the information provided by CSI-337 by driving to Bay Avenue, identifying the residence described by CSI-337 as 292 Bay Avenue, and obtaining utility

information on the residence to determine to whom utilities were assigned.

On December 30, 2009, Detective Tierney met with CSI-337 face-to-face to verify information from his investigation. CSI-337 was shown photos of 292 Bay Avenue and of Robinson, which the informant verified as the address and individual described in the original tip. Detective Tierney was able to associate the residence with Robinson based on a citation Robinson had received from law enforcement approximately one month earlier. Following this briefing that same day, Detective Tierney attempted to conduct a controlled purchase of crack cocaine from Robinson at 292 Bay Avenue. Pursuant to the Concord PD's standard procedures, CSI-337 was briefed as to the controlled purchase, searched thoroughly (including the informant's vehicle), and sent to attempt to purchase crack cocaine. Robinson was not home, however, and the purchase did not occur.

Detective Tierney met with CSI-337 again on January 7, 2010, to conduct a controlled purchase. CSI-337 was searched thoroughly (including the informant's vehicle), provided money with which to purchase the drugs, and sent to 292 Bay Avenue to conduct the purchase. CSI-337 returned shortly thereafter, reporting a purchase of crack cocaine from "Mike." The drugs were collected, the informant and vehicle were searched, and a debriefing was conducted.

On January 8, 2010, Detective Tierney obtained a copy of the utilities report for 292 Bay Avenue, which reflected that an individual named Stephanie Long was the last person responsible for the account but that service had been cut off in September/October 2009. After tampering was discovered, the meter was pulled on January 7, 2010.

On January 12, 2010, Detective Tierney arranged with CSI-337 for another controlled purchase at 292 Bay Avenue. Audio and visual recording equipment was placed on CSI-337 for the duration of the controlled purchase. Detective Tierney met with CSI-337 at a parking deck across from the Concord PD, again searched the informant and the informant's vehicle, and provided the informant with cash (which was photocopied (Gov't. Ex. 8)) for purchasing the drugs.

The distance from the parking deck where Detective Tierney and CSI-337 met to the residence at 292 Bay Avenue was less than one mile. The informant travelled directly to the Bay Avenue address. Because 292 Bay Avenue was not in a direct line of sight from the Concord PD, a Concord PD surveillance unit was stationed in the area of Bay Avenue and observed CSI-337 turn onto Bay Avenue and pull up in front of the house.

CSI-337 returned shortly to the parking deck and delivered a bag of crack cocaine obtained from the controlled purchase at 292 Bay Avenue. Pursuant to Detective Tierney's practice, a

debriefing occurred, the video and audio were collected, and the informant and the informant's vehicle were searched. Detective Tierney photographed the crack cocaine and retained it as evidence, pursuant to Concord PD procedure. (Gov't Exs. 10, 11.) The detective also reviewed the audio and video, which confirmed to him, based on observations and timing, that the informant did not make any detours but traveled directly to and from 292 Bay Avenue and purchased crack cocaine there.[1]

On January 13, 2010, Detective Tierney applied with the District Court Division of the General Court of Justice of Cabarrus County, North Carolina, for a search warrant for 292 Bay Avenue. The search warrant contained photographs of the residence and Robinson and provided the following information, in pertinent part:

> This investigation has utilized the assistance of a
> confidential source of information (CSI). This CSI
> has established previous reliability and credibility

[1] Robinson introduced a copy of a still photograph depicting himself, which the Government produced from the video. (Def.'s Ex. 1.) The photograph bears an electronic date (apparently imprinted automatically by the recorder) of "2008-03-24." Robinson argues that the date stamp undermines Detective Tierney's testimony that the recording was taken on January 12, 2010. However, Detective Tierney testified that the electronic date is incorrect, that the recording equipment was new, and that because he did not know how to fix the date, he simply recorded the correct date verbally on the recording at the time it was made. The Government has submitted the audio/video recording for an *in camera* review, which the court has performed. Information on the recording makes clear that the stamped date could not possibly be correct, and the court credits Detective Tierney's testimony, including his conclusion that the recording confirms his determination that CSI-337 obtained drugs from 292 Bay Avenue on the trip.

with this Applicant and the Concord Police Department Vice and Narcotics Unit. The true identity of the CSI will not be disclosed in order to prevent any intimidation or harassment to cooperating witnesses in this investigation should his/her true identity become known. The disclosure of the identity of this CSI at this time would be detrimental to on-going criminal investigations being conducted by the Concord Police Department. This CSI shall be referred to as CSI-337.

This investigation concerns a crack cocaine sale and delivery operation being maintained from a residence:

292 Bay Avenue, NW
Concord, North Carolina

City of Concord Utilities information indicates that the light and water service to 292 Bay Avenue, NW, Concord, North Carolina where [sic] last in the name "Stephanie Michelle Long". The records showed that the utilities were turned off sometime in September/October. Meter tampering was recently discovered and the meter was pulled on January 7th, 2010.

On Wednesday, December 23, 2009 Detectives with the Concord Police Departments Vice/Narcotics Unit received information from a Confidential Source of Information (CSI). This CSI, CSI-337, told detectives about a drug dealer who goes by the name of "Mike", describing "Mike" as being a black male approximately thirty years old with a stocky build. CSI-337 went on to tell detectives that "Mike" is operating a crack cocaine sale and distribution operation out of his house on Bay Avenue, which is the house with the fence around it. CSI-337 added that she/he could make a purchase of crack from "Mike" at his house on Bay Avenue.

After learning this information, this applicant personally traveled to Bay Avenue to locate the suspect residence. Seeing that 292 Bay Avenue was directly across from Gold Street and had a fenced in yard as described by CSI-337, applicant photographed the residence. This applicant further conducted a search of Concord Police Department records, which shows that Michael Anthony Robinson Jr. resides at 292

Bay Avenue and has been arrested for carrying a concealed weapon on September 29, 2009.

On Wednesday, December 30, 2009 Detectives met with CSI-337 who was able to positively identify "Mike" as being Michael Anthony Robinson Jr. and the suspect residence as being 292 Bay Avenue, NW through photographs. CSI-337 then provided additional information stating that "Mike" is a violent person who has answered his front door on multiple occasions while a holding a short shotgun, indicating the shotgun was approximately twelve to eighteen inches long. A check of Michael Anthony Robinson Juniors criminal history shows that he has an extensive history with crimes such as robbery, assault and weapons charges. Both the Cabarrus County Sheriff's Office and the Kannapolis Police Department have Michael Anthony Robinson Jr. listed as having violent tendencies and their records show that he is a gang member who is known to carry guns.

During the forty-eight hours prior to this application, CSI-337 met with detectives and was provided a sum of money from the Concord Police Department Special Funds for the purpose of making a controlled purchase of crack cocaine from 292 Bay Avenue. After being searched for contraband and briefed on this operation CSI-337 was able to travel to 292 Bay Avenue, NW where she/he personally purchased a quantity of crack cocaine from within the residence. After making the purchase CSI-337 returned to the meeting location and turned the crack cocaine over to detectives and a debriefing was conducted. At the conclusion of this operation CSI-337 indicated that she/he could purchase crack cocaine from within this residence again, in the future if we would like.

A person's home, vehicle, and work place are the natural repository of a person's personal effects and possessions. Likewise, it is basic human nature to possess and maintain items of personal property in the form of photographs, addressed mail, receipts, cancelled checks, utility bills, and house and vehicle keys within a person's home, vehicle, and work place. Applicant has previously conducted searches of people's homes, vehicles, and workplaces. In the course of those searches, applicant has recovered

> items of personal property of the type described
> above. Applicant is seeking authority to seize
> personal property in the form of photographs,
> addressed mail, receipts, cancelled checks, utility
> bills, house and vehicle keys, and similar effects
> from within the residence of 292 Bay Avenue, NW in
> Concord, North Carolina in an effort to show
> constructive possession of the place being searched
> and of the items being seized.

(Gov't Ex. 1.) Under the section of the search warrant entitled "Property/Evidence to Be Seized" were included, among other things, "[a]ll equipment and materials used or designated to facilitate violations of the North Carolina Controlled Substances Act" and "[i]nstrumentalities of cocaine [p]ossession and [d]istribution," such as "[l]arge quantities of United States currency, cellular telephones, pagers, firearms and other deadly weapons." (<u>Id.</u>) A judicial officer issued the search warrant that day at 7:25 a.m. (<u>Id.</u>)

The Concord PD SWAT team searched 292 Bay Avenue that day, finding no one at home. As a result of the search, Robinson has been charged in a single-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Robinson now moves to reveal the name and address of CSI-337 and to suppress evidence of the firearm seized from 292 Bay Avenue.

## II. ANALYSIS

### A. Motion for Disclosure of Informants

Robinson seeks "the disclosure of the names and addresses of all informants or undercover operatives of the prosecution." (Doc. 19 at 1.) It is apparent from Robinson's other filings and from the April 20, 2011, hearing that this motion is aimed at "CSI-337." Robinson bases his argument on the premise that the informant may have information that contradicts the testimony of Detective Tierney, and Robinson contends that the only way to test the detective's veracity is through disclosure of the informant. The Government responds that CSI-337's identity should not be disclosed because the informant was used only for purposes of obtaining the search warrant and was not involved in the underlying charged offense, and because disclosure would compromise the Concord PD's ability to continue to use an informant who has proven valuable and reliable.

The decision whether to require disclosure of a confidential informant lies generally within the discretion of the district court. United States v. Blevins, 960 F.2d 1252, 1260 (4th Cir. 1992). Robinson bears the burden of proving that he is entitled to know the identity of a confidential informant. Id. at 1258.

The Government generally enjoys a privilege under certain circumstances to withhold the name of a confidential informant.

United States v. Gray, 47 F.3d 1359, 1364-65 (4th Cir. 1995). The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement," and the privilege recognizes "the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro v. United States, 353 U.S. 53, 59 (1957).

The privilege is lost, however, "when the informant's identity is relevant and helpful to the defense or is essential to fundamental requirements of fairness." Gray, 47 F.3d at 1364. Under Roviaro, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. at 62. The Fourth Circuit has emphasized that "the key to reviewing a district court's failure to compel disclosure is a balancing of the competing interests in light of the particular circumstances of the case." Gray, 47 F.3d at 1365 (internal quotation marks omitted). "[A]n important factor affecting disclosure is the informant's involvement in the criminal acts of the accused." Id. Under this approach, the Government is privileged to withhold the identity of an informant when he or she was a "mere tipster" or was used only for obtaining a search warrant. Id. In contrast, failing to disclose the informant's identity more

likely constitutes error if the informant was an "active participant in the events leading to the arrest of the accused." Id.

Here, Robinson's motion is controlled by "the well settled principle that the government is permitted to withhold the identity of a confidential informant when the informant was used only for the limited purpose of obtaining a search warrant." Id. (internal quotation marks omitted); accord United States v. Poms, 484 F.2d 919, 922 (4th Cir. 1973) (per curiam). On this record, the court finds that CSI-337 was used only to obtain a warrant to search Robinson's residence for evidence of drug offenses. During the search, police discovered the firearm that is the basis for the current criminal charge. CSI-337 thus had no connection to the criminal act with which Robinson is charged.

Robinson has not shown how the balance between "the public interest in protecting the flow of information" and his "right to prepare his defense" falls in his favor in this situation. Indeed, Robinson has provided no reasons that CSI-337's name or address would be relevant or helpful to his defense against his 18 U.S.C. § 922(g)(1) charge. Cf. United States v. Hodges, 217 F. App'x 275, 276 (4th Cir. 2007) (unpublished per curiam opinion) (holding that the district court did not abuse its discretion by declining to compel disclosure of a confidential

informant's identity where the informant was used only to obtain a search warrant for the defendant's residence to search for indicia of heroin trafficking and the charges against the defendant were not based on heroin trafficking but on firearms found in the defendant's home during the search).[2]

Robinson's motion suggests the hope that disclosure of CSI-337's name and address may lead ultimately to a hearing on the truthfulness of the warrant affidavit under Franks v. Delaware, 438 U.S. 154 (1978). However, to obtain such a hearing a defendant must first make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement [was] necessary to the finding of probable cause." Id. at 155-56. For the reasons given in the court's discussion below relating to Robinson's motion to suppress, Robinson has not made this showing. Moreover, Robinson has not indicated how disclosure of CSI-337's name and address would enable him to make such a showing, beyond mere speculation that facts in the affidavit may not be true and cannot be confirmed without testimony from CSI-337. A holding that Robinson is entitled to CSI-337's name and identity solely to test the truthfulness of

---

[2] Unreported decisions are not precedential but are cited for their persuasive authority based on similar facts.

the warrant affidavit, without any evidence casting doubt on the affidavit's truthfulness, would effectively nullify "the well settled principle that the government is permitted to withhold the identity of a confidential informant when the informant was used only for the limited purpose of obtaining a search warrant." Gray, 47 F.3d at 1365 (internal quotation marks omitted); cf. id. at 1363-65 (affirming the denial of a motion to disclose a confidential informant's identity where the defendant sought disclosure only to challenge the validity of a search warrant, where the defendant had not made the preliminary showing required by Franks, and where there was no indication that disclosure of the informant's identity would enable the defendant to make such a showing).

Therefore, for all the above reasons, Robinson's Motion for Disclosure of Informants (Doc. 19) is DENIED.

### B. Motion to Suppress

Robinson offers several arguments to challenge the search warrant of his residence. Grouped together, his contentions fall into three categories: the warrant affidavit fails to demonstrate that he sold any drugs from 292 Bay Avenue; the affidavit fails to show that CSI-337 was adequately "controlled" during the final purchase (the only one noted in the warrant); and the affidavit otherwise lacks indicia of reliability. In

fact, Robinson contests whether the controlled purchase even occurred.

The Government responds that probable cause is evident on the face of the search warrant and affidavit and it is irrelevant whether Robinson sold any drugs from 292 Bay Avenue because there was probable cause to believe that the *residence* was being operated as a crack house. In any event, the Government argues, the issuing officer was permitted to make reasonable inferences about the controlled purchase and, alternatively, the warrant should be upheld under the good faith exception in United States v. Leon, 468 U.S. 897 (1984).

The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. amend. IV. Courts apply a "totality of the circumstances" analysis to determine whether probable cause exists to support a search warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. A reviewing court need only determine "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam). In reviewing a

probable cause determination, a court may consider only "the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). "When a search is conducted pursuant to a warrant, the determination of probable cause by the magistrate who issued the warrant is entitled to 'great deference.'" United States v. Randolph, 261 F. App'x 622, 625 (4th Cir. 2008) (unpublished opinion) (quoting United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990)).

The warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A warrant meets this particularity requirement "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended," United States v. Owens, 848 F.2d 462, 463 (4th Cir. 1988), and the things to be seized, see United States v. Hurwitz, 459 F.3d 463, 470 (4th Cir. 2006). Here, the warrant contained not only the address of the residence to be searched, but also a detailed description of the appearance and location of the residence as well as photographs of the exterior. The warrant authorized police to seize cocaine, drug paraphernalia (defined as "[a]ll equipment and materials used or designated to facilitate violations of the North Carolina Controlled Substances Act"), instrumentalities of cocaine possession and

distribution (defined by a detailed list of examples that includes "firearms"), and indicia of domain (defined by a detailed list of examples of personal property showing constructive possession of the premises). (Gov't Ex. 1.) The warrant thus satisfied the particularity requirement.

Where, as here, a warrant is based in part upon information from a confidential informant, two factors are key to the court's "totality-of-the-circumstances" analysis: the informant's "veracity" or "reliability" and his or her "basis of knowledge." Wilhelm, 80 F.3d at 119. "When an informant has proven to be reliable in the past and has firsthand knowledge of the criminal activity in question, probable cause exists for issuing a search warrant." United States v. Canady, 142 F. App'x 133, 135 (4th Cir. 2005) (unpublished per curiam opinion) (citing United States v. Chavez, 902 F.2d 259, 264 (4th Cir. 1990)). Here, the affidavit stated that the informant "has established previous reliability and credibility with this Applicant and the Concord Police Department Vice and Narcotics Unit." (Gov't Ex. 1.) CSI-337's descriptions of "Mike's" physical build and habit of answering the front door while carrying a short shotgun indicated that the informant had personal experience with "Mike," thus establishing a "basis of knowledge." In any event, the controlled purchase by CSI-337

described in the affidavit definitively established a "basis of knowledge."

Moreover, "[t]he Fourth Circuit has explained that in evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration." Wilhelm, 80 F.3d at 119. Here, according to the affidavit, CSI-337 told officers about a drug dealer named "Mike," provided a physical description of "Mike," and told officers that "Mike" was operating a crack cocaine sale and distribution operation out of his house on Bay Avenue, which the informant described. The informant added that he/she could make a purchase of crack from "Mike" at the house. Detective Patrick Tierney then visited the house described by the informant and photographed it. Police records of a recent citation showed that Robinson resided at the house and had previously been arrested for carrying a concealed weapon. Detectives then met with CSI-337, who positively identified, through photographs, "Mike" as being Robinson and the suspect residence as being the house visited by Detective Tierney. The informant stated that "Mike" was a violent person who had answered his front door on multiple occasions while holding a short shotgun, approximately twelve to eighteen inches long. A check of Robinson's criminal history showed that he had an extensive record that included crimes such as robbery, assault,

and weapons charges.  Both the Cabarrus County Sheriff's Office and the Kannapolis Police Department had Robinson listed as having violent tendencies, and their records showed that he was a gang member who was known to carry guns.  Thus, all the findings by the Concord PD described in the affidavit were consistent with CSI-337's information.

Most important, within forty-eight hours of the application for the warrant, the informant's information was corroborated by a controlled purchase conducted by the Concord PD with the assistance of CSI-337.  According to the affidavit, CSI-337 met with detectives and was provided money for the purpose of making a controlled purchase of crack cocaine from Robinson's residence.  The informant was searched for contraband and briefed on the operation, was permitted to travel to Robinson's residence, where the informant personally purchased a quantity of crack cocaine from within the residence, and then returned to the meeting location and gave the cocaine to the detectives before being debriefed.  The informant indicated an ability to purchase crack cocaine from the residence again in the future.

Robinson argues that the affidavit did not provide enough details on the way in which the controlled purchase was executed, and that it therefore left open the possibility that the informant did not obtain the crack cocaine from Robinson or at Robinson's residence.  In particular, Robinson points out

that the affidavit contained no mention of audio or video surveillance of the controlled purchase.

These arguments are not persuasive. The affidavit indicated that the controlled purchase was carefully supervised by the detectives — for example, the informant was searched for contraband prior to the purchase and met with the detectives before and after the purchase for briefing and debriefing. Also, Detective Tierney swore in the affidavit that CSI-337 traveled to 292 Bay Avenue and "personally purchased a quantity of crack cocaine from within the residence." (Gov't Ex. 1.) Because this court must only determine whether there is "substantial evidence" in the record before the magistrate supporting the magistrate's issuance of the warrant, the affidavit's failure to explain each detail of the execution of the controlled purchase does not lead to the conclusion that probable cause was lacking under the "totality of the circumstances." Moreover, Robinson has cited no authority indicating that a warrant based partly upon a controlled purchase is invalid if the supporting affidavit does not state that audio or video surveillance was used during the purchase or that an officer personally observed the transaction.

Finally, the affidavit noted that detectives of the Concord PD met with CSI-337 on several occasions. The Fourth Circuit has held that "[t]here is a substantial difference between an

informant who deals with the authorities in person and an
anonymous phone caller. . . .[C]ourts have had no difficulty
distinguishing between cases involving face-to-face encounters
with informants and cases involving anonymous tipsters. Unlike
an anonymous tipster, an informant who meets face-to-face with
an officer provides the officer with an opportunity to assess
his credibility and demeanor and also exposes himself to
accountability for making a false statement." United States v.
Blauvelt, No. 09-4601, 2011 WL 810111, at *5 (4th Cir. Mar. 9,
2011) (alterations in original) (quoting United States v. Perez,
393 F.3d 457, 462 (4th Cir. 2004)).

For all the above reasons, the court finds there is
"substantial evidence" in the record that was before the
judicial officer supporting his decision to issue the search
warrant. See generally Randolph, 261 F. App'x at 627 ("[A]n
affidavit may support the issuance of a warrant even if '[n]o
single piece of evidence in it is conclusive' so long as 'the
pieces fit neatly together and, so viewed, support the
Magistrate's determination.'" (second alteration in original)
(quoting Upton, 466 U.S. at 733)).

Robinson's challenge to the warrant is not based
principally upon the information located within the four corners
of the warrant and its affidavit, however. Rather, Robinson
attempts to go behind the warrant, contesting the truthfulness

of the affidavit and arguing both that it contained false or
unreliable statements and that it omitted critical information.
To go behind the warrant and obtain a hearing on the
truthfulness of the warrant affidavit, Robinson must first make
a "substantial preliminary showing that a false statement
knowingly and intentionally, or with reckless disregard for the
truth, was included by the affiant in the warrant affidavit, and
[that] the allegedly false statement [was] necessary to the
finding of probable cause."  *Franks*, 438 U.S. at 155-56.
Omissions can also lead to *Franks* hearings, but only if the
defendant shows that "the omission is the product of a
deliberate falsehood or of reckless disregard for the truth."
United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990)
(internal quotation marks omitted).  The court finds that
Robinson has not satisfied these standards.

To the contrary, all the evidence viewed by the court
during the April 20, 2011, hearing corroborated the information
in the warrant affidavit.  Detective Tierney's testimony
provided additional facts regarding CSI-337's long history of
providing reliable information to the Concord PD.  Detective
Tierney testified that audio and video surveillance was indeed
used during the controlled purchase and that stationary
surveillance by Concord PD officers was also used.  The court
has viewed the audio and video recording *in camera* and finds

that it provides further confirmation that CSI-337 traveled to 292 Bay Avenue and purchased drugs from within that residence. Moreover, Detective Tierney testified that an earlier controlled purchase of drugs from the same address had also taken place. Robinson has made no preliminary showing of a false or reckless statement in the affidavit or an omission that is the "product of a deliberate falsehood or of reckless disregard for the truth." Quite the opposite, the affidavit and Detective Tierney's testimony demonstrate solid police work. Therefore, Robinson is not entitled to a <u>Franks</u> hearing on this record.

Robinson emphasizes that the warrant affidavit did not show that the drugs purchased from 292 Bay Avenue were purchased from him, and Robinson points to Detective Tierney's testimony that while Robinson was present during the final controlled purchase, he was not the person from whom CSI-337 actually received the drugs. This argument is irrelevant. The salient question is whether probable cause existed to believe that indicia of drug offenses would be located at 292 Bay Avenue. The evidence presented in the search warrant affidavit unquestionably provided such probable cause even though someone other than Robinson personally conducted the sale of illegal drugs.

Even if probable cause could be said to be lacking, <u>United States v. Leon</u>, 468 U.S. 897 (1984), established a good faith exception to the exclusionary rule. "<u>Leon</u> teaches that a court

should not suppress the fruits of a search conducted under the authority of a warrant, even a subsequently invalidated warrant, unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Andrews, 577 F.3d 231, 236 (4th Cir. 2009) (internal quotation marks omitted), cert. denied, 130 S. Ct. 1031 (2009). "[E]vidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was objectively reasonable." Id. (internal quotation marks omitted).

There are four situations in which an officer's reliance on a search warrant would not be "objectively reasonable": (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role as a detached and neutral decisionmaker"; (3) "the officer's affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "a warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Id. (internal quotation marks omitted). Robinson

argues that the third situation is present here and renders the good faith exception inapplicable.[3]

"[T]he *Leon* good-faith exception does not apply in the case of a bare bones affidavit." <u>Wilhelm</u>, 80 F.3d at 122. A "bare bones" affidavit is "one that contains wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." <u>United States v. DeQuasie</u>, 373 F.3d 509, 521 (4th Cir. 2004) (internal quotation marks omitted). The standard required for the good faith exception to apply is less demanding than the "substantial basis" threshold required to establish probable cause in the first place. <u>United States v. Bynum</u>, 293 F.3d 192, 195 (4th Cir. 2002).

The court finds that the affidavit in this case, one-and-a-half pages long and filled with details about the applicant's credentials, the informant's information, corroboration of that information, and the controlled purchase of crack cocaine from Robinson's residence within forty-eight hours of the application, is not a "bare bones" affidavit. The affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

---

[3] The first situation is not present for the reasons discussed above in connection with Robinson's <u>Franks</u> argument. Robinson does not argue that the other two exceptions are present, and the court finds nothing in the record to so indicate.

Therefore, even if probable cause were lacking, the good faith exception established by <u>Leon</u> would apply.

## III. CONCLUSION

Having carefully considered all arguments by the parties and for the reasons set forth above,

IT IS THEREFORE ORDERED that Defendant Michael Anthony Robinson, Jr.'s Motion for Disclosure of Informants (Doc. 19) and Motion to Suppress (Doc. 14) are DENIED.

    /s/ Thomas D. Schroeder    
United States District Judge

April 21, 2011